UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ELIZABETH DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:16-cv-00020-TWP-TAB |
| ) | |
| NANCY A. BERRYHILL,[1] Acting Commissioner ) | |
| of the Social Security Administration, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Elizabeth Davis ("Davis") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423(d) (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

## I. BACKGROUND

### A. Procedural History

On October 16, 2012, Davis filed an application for DIB, alleging a disability onset date of September 13, 2012. (Filing No. 17-2 at 14.) Her application was initially denied on February 4, 2013, and again on reconsideration on February 28, 2013. Davis filed a written request for a hearing on March 12, 2013. On June 26, 2014, a hearing was held before Administrative Law Judge George A. Jacobs (the "ALJ") in Louisville, Kentucky. Davis was present and represented

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

by counsel. An impartial vocational expert, Sharon B. Lane (the "VE"), also appeared and testified at the hearing. On July 25, 2014, the ALJ denied Davis' application for DIB. Following this decision, Davis requested review by the Appeals Council on August 6, 2014. On December 16, 2015, the Appeals Council denied Davis' request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On February 9, 2016, Davis filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). (Filing No. 1.)

**B.     Factual Background**

Davis was thirty-eight years old at the time of her alleged disability onset date, and she was forty years old at the time of the ALJ's decision. She has a ninth grade education and, prior to the onset of her alleged disability, she worked as a laborer for a printing company and as a patcher and detailer for a furniture manufacturer. (Filing No. 17-2 at 44; Filing No. 17-6 at 15.)

Davis suffers from a long history of back pain. From 2005 to 2012, she underwent four back surgeries, including a diskectomy, a fusion, and a scar removal procedure. (Filing No. 17-7 at 84.) On September 23, 2011, following her involvement in a car accident, William L. Voskuhl, M.D. ("Dr. Voskuhl"), Davis' treating physician, performed a magnetic resonance imaging ("MRI") scan of Davis' lumbar spine. The MRI showed Davis suffered from a moderate right-sided neural foraminal narrowing at L5-S1 due to facet hypertrophic changes, a left eccentric disk protrusion near the left S1 nerve, and a broad-based disk bulge without foraminal or spinal canal compromise at L4-L5. *Id*. at 107.

On December 7, 2011, David P. Rouben, M.D. ("Dr. Rouben"), an orthopedic surgeon, evaluated Davis and observed that her prior fusion procedure was not successful and she suffered from a posteriorly displaced implant. *Id*. at 40. On February 6, 2012, Davis underwent surgery to

remove the improperly placed implant and an L5-S1 surgical fusion. *Id*. at 67. Two months after the procedure, on April 11, 2012, Dr. Rouben noted that he was "totally impressed" by Davis' progress and accomplishments, and stated she was doing "profoundly well" and her x-rays looked "terrific." *Id*. at 22. Dr. Rouben also opined that she had an expected degree of soreness on her left side and recommended Davis begin pool and water therapy to improve her progress. *Id*.

On May 8, 2012, Dr. Rouben observed that Davis was doing well, her leg pain improved substantially, and she continued to progress in therapy. *Id*. at 21. Dr. Rouben noted that Davis walked erect without a limp, she had excellent strength in her lower extremities, her wound was healing well, and her x-rays did not indicate evidence of failure. *Id*. During the visit, Davis informed Dr. Rouben that she "feels much, much better," but still suffered some pain and feels that she is unable to return to work. *Id*.

One month later, on June 13, 2012, Dr. Voskuhl conducted a follow up visit with Davis concerning her back pain and observed tenderness in Davis' back and a reduced range of motion at the waist. *Id.* at 93. From August 2012 to October 2012, Davis complained of lower back, hip, and leg pain. *Id.* at 89-92.

On October 16, 2012, Davis applied for disability insurance benefits and Dr. Rouben wrote a letter to Davis' short-term disability insurance carrier explaining that Davis suffered from chronic permanent nerve damage to the left L5 and S1 neural elements. (Filing No. 17-7 at 14.) Dr. Rouben opined that Davis is unable to "perform meaningful and gainful employment," because she would not be capable of "standing for any period of time, bending for any period of time, walking for any period of time, or sitting for any period of time without having more time resting than functioning." *Id*. at 15. Dr. Rouben also stated that he does not think Davis is "capable of doing much of anything" outside of the tasks necessary for daily living. *Id*. at 16.

3

Thereafter, on January 4, 2013, consulting physician, Richard P. Gardner, M.D. ("Dr. Gardner") examined Davis and observed that she suffered from chronic lower back pain with decreased range of motion in her lumbar spine, but Davis maintained full range of motion in her cervical spine, shoulders, and knees. *Id.* at 132-134. Dr. Gardner noted that Davis maintained the ability to transfer on and off of the examination table independently, had 5/5 grip strength bilaterally, and could complete such tasks as buttoning, zipping and picking up a coin. *Id.* Dr. Gardner also opined that Davis could ambulate without assistive devices, perform tandem walking in a fair manner, stand on her toes, and maintained normal balance. *Id.*

On January 17, 2013, Michael Brill, M.D., ("Dr. Brill"), a state agency reviewing physician, examined Davis' records and determined that Davis was not disabled. ([Filing No. 17-3 at 10](#).) Dr. Brill acknowledged that Davis suffered from chronic lower back pain, but noted Davis has full 5/5 strength and could ambulate in a stable manner without assistive devices. *Id.* at 9. Dr. Brill opined that Davis maintains the ability to perform some work, however, Davis is limited to occasionally lifting or carrying no more than twenty pounds; frequently carrying or lifting no more than ten pounds; standing, walking, and sitting with normal breaks for six hours in an eight-hour workday; and with no limitations on her ability to push or pull. *Id.* at 8. Fernando R. Montoya, M.D. affirmed Dr. Brill's conclusions. *Id.* at 20.

On February 4, 2013, a Human Resources employee from Davis' previous employer completed a report regarding Davis' work performance. ([Filing No. 17-6 at 43-62](#).) The report stated that Davis' health did not necessitate frequent breaks or rest periods, but Davis "sometimes needed to sit down and rest which she was allowed to do." *Id*. at 45. The report also indicated that Davis had no difficulties understanding or carrying out short and simple instructions, working in coordination with or in the proximity of others without distractions, getting along with

4

supervisors and co-workers, accepting instructions, responding to criticisms, and responding to changes in the workplace. *Id.*

That same day, on February 4, 2013, Kari Kennedy, Psy.D. ("Dr. Kennedy"), a state agency reviewing psychologist, completed a Psychiatric Review Technique assessment of Davis and opined that Davis suffered mild limitations in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, but concluded that Davis stopped working because of physical, as opposed to mental, impairments. (Filing No. 17-3 at 5-7.) Joelle J. Larsen, Ph.D. affirmed Dr. Kennedy's conclusions. *Id.* at 18.

On May 22, 2013, Dr. Rouben opined that Davis' chronic pain was a "total disability." (Filing No. 17-8 at 8.) However, that same day, Dr. Rouben conducted an x-ray of Davis' lateral lumbar spine, which showed signs of a successful lumbar fusion, good positioning of screws, and no evidence of any failure of the implant. *Id.* at 18.

On January 14, 2014, Davis began seeing a pain management specialist from Commonwealth Pain Association ("Commonwealth"). (Filing No. 17-8 at 40.) Davis reported constant lower back and leg pain, but noted pain medications helped alleviate her pain. *Id.* On March 11, 2014, she reported feeling "80% if not moving around" and that her pain medications provided 100% relief for five hours. *Id.* at 34. The following month, on April 8, 2014, Davis reported an improvement in her pain and continued to report improvement throughout the proceeding months. *Id.* at 30. On June 11, 2014, Davis stated that her pain was "well-controlled." *Id.* at 23.

During the administrative hearing, Davis testified that she suffers pain in her left knee and back, and estimated that she spent most of her day laying down to relieve the pain. (Filing No. 17-

2 at 46-47, 61.) She also stated she received injections in the past, but the injections failed to relieve her pain. *Id.* at 63.

The VE testified at the administrative hearing about Davis' work history and current capacity to work. The VE stated that Davis' past work as a furniture patcher, furniture detailer, and laborer amounted to semi-skilled jobs of a medium exertional level. *Id.* at 64-65. The ALJ presented to the VE a hypothetical individual of the same age, education and work experience as Davis who could frequently lift ten pounds; occasionally sit for six hours in an eight-hour workday; stand and/or walk for two hours in an eight-hour workday, with a sit and/or stand option of at least thirty minutes in a position; occasionally perform postural activities, but never climb ladders, ropes, scaffolds, kneel, crawl or perform push and pull functions with her lower extremities; but could perform simple repetitive tasks, have occasional contact with co-workers and supervisors; but no contact with the public or hazards such as heights, machinery, temperature extremes, humidity, or vibrations. *Id.* at 65. The VE testified that such a hypothetical individual could not perform Davis' prior work but could perform a restricted range of sedentary jobs, including as a weigher, hand polisher, and sorter. *Id.* at 66. The ALJ then adjusted the hypothetical, limiting the individual to sitting or standing every fifteen minutes. *Id.* The VE testified that no job in the economy exists for such a person. *Id.* The ALJ then asked whether there were jobs available where the individual is limited to sitting for less than six hours in an eight-hour workday and walking and/or standing for less than two hours in an eight-hour workday. *Id.* The VE again stated that no jobs exist for such a person. *Id.*

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant

7

economy, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her

acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Davis met the insured status requirement of the Act through December 31, 2017. The ALJ then began the five-step analysis and determined that Davis had not engaged in substantive gainful activity since September 13, 2012. At step two, the ALJ found that Davis had the following severe impairments: lumbar degenerative disc disease with radiculopathy, obesity, depression and anxiety. At step three, the ALJ concluded that Davis does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Davis had an RFC to perform sedentary work as defined in 20 C.F.R. 404.1567(a), but with the following limitations:

> a sit/stand option with at least 30 minutes in a position; can occasionally perform postural activities but never climb ladders/ropes/scaffolding, kneel, or crawl; must avoid hazards like machinery [and] heights, temperature extremes, humidity, and vibration; can perform no push/pull with the lower extremities; can perform simple, repetitive tasks; and can have occasional contact with co-workers [and] supervisors but no contact with the public.

(Filing No. 17-2 at 18). At step four, the ALJ found that Davis had past relevant work as a furniture patcher, furniture detailer and as a laborer, however, Davis was unable to perform any of her past relevant work. At step five, the ALJ determined that Davis was not disabled because there were jobs that existed in significant numbers in the national economy that the claimant can perform, considering her age, education, work experience and RFC. Those jobs included weigher, hand polisher, and sorter. Therefore, the ALJ denied Davis' application for DIB because she was not disabled.

## IV. DISCUSSION

In her request for judicial review, Davis asserts two reasons for remand. First, she contends the ALJ erred in failing to consider the combined effect of her impairments. Second, Davis argues the ALJ erred when failing to give controlling weight to Dr. Rouben, her treating physician. The Court will address each issue in turn.

### A. Consideration of Impairments in Combination.

Davis asserts the Court should remand this case to the ALJ because the ALJ considered her impairments individually, but failed to consider the combined effect of all of her impairments. According to social security regulations,

> [i]n determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, [the ALJ] will consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 404.1523.

After reviewing the record, the Court finds the ALJ considered the combined effects of Davis' impairments. The ALJ's decision specifically states that he considered both physical and mental impairments "singly and in combination," and determined that the impairments "do not meet or medically equal" the criteria of listed impairments. ([Filing No. 17-2 at 17](Filing No. 17-2 at 17).) There is no dispute that the ALJ considered the impact of Davis' obesity on her ability to perform certain types of work. The Court also notes, when determining Davis' RFC, the ALJ mentioned Davis' back and knee impairments, as well as her previous employer's statement that Davis "had no problems with her work, either *physically or mentally*, except that she was sometimes allowed to sit down and rest." ([Filing No. 17-2 at 19](Filing No. 17-2 at 19).) (Emphasis added.) The ALJ further acknowledged Davis'

"distraction[s] due to some chronic pain or flare-ups[,] as well as in combination with any underlying mental impairment." *Id.* at 21.

Accordingly, the Court concludes that the ALJ considered Davis' impairments, both individually and in combination with one another. *See Allen v. Astrue*, 843 F.Supp.2d 920, 933 (S.D. Ind. 2011) (holding, an ALJ is not obligated to state specifically whether a combined effect of a claimant's impairments met or equaled a listing, as long as it is apparent when the decision is read as a whole that the ALJ considered the combined effect of the claimant's impairments when evaluating the claimant's functional abilities).

B. **Controlling Weight to Treating Physician.**

Davis argues that despite Dr. Rouben's conclusion that she would be unable to perform any meaningful and gainful work due to her impairments, the ALJ failed to give considerable weight to Dr. Rouben's opinion and, instead, determined that she could perform various sedentary jobs. An ALJ must give controlling weight to a treating source's medical opinion regarding the nature and severity of a claimant's impairments, only if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(c)(2); *see also Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). When giving a treating physician's medical opinion less weight, an ALJ is required to "provide a sound explanation for his decision to reject it," and instead to adopt another view. 20 C.F.R. § 404.1527(c)(2).

In his decision, the ALJ specifically explained:

> while an opinion from a treating specialist like Dr. Rouben is ordinarily given greater weight than that of a state agency reviewing physician, Dr. Rouben's opinion in this case is given little weight because it is not consistent with [Davis'] physical exam findings, types and levels of treatments received, and her more recent statements for treatment indicating that her pain was well-controlled and without side effects.

11

([Filing No. 17-2 at 20](Filing No. 17-2 at 20)).  The ALJ also noted, "while reports from Dr. Rouben [in 2013] indicate that [Davis] remained disabled," more recent opinions by state agency physicians, the pain management specialist at Commonwealth, as well as Davis' own reports indicate that Davis' pain was "well-controlled."  *Id.*  Accordingly, the Court finds that the ALJ articulated minimal, but legitimate, justification for giving less weight to Dr. Rouben's opinion.  *See Scheck*, 357 F.3d at 700.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED** and Davis' appeal is **DISMISSED**.

**SO ORDERED.**

Date:  6/27/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Alvin D. Wax
waxa@bellsouth.net

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov